UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FAIZA AMBREEN, *et al.*,<br>    *Plaintiffs*,<br><br>    v.<br><br>MERRICK GARLAND, *et al.*,<br>    *Defendants*. | No. 1:23-cv-01437-MSN-IDD |

**MEMORANDUM OPINION AND ORDER**

This action involves a claim under the Administrative Procedure Act ("APA") seeking review of a decision by the Board of Immigration Appeals ("BIA"). Before the Court is Defendants' Motion for Summary Judgment (ECF 5) and Plaintiffs' Cross-Motion for Summary Judgment (ECF 12). Because the BIA's decision upholding the denial of Plaintiffs' I-130 petition was arbitrary and capricious under the APA, the Court will grant Plaintiffs' motion and deny Defendants' motion.

I.   INTRODUCTION

   A.   Legal Background

To gain the right to be lawfully present in the United States, a person who is already in the United States may seek an adjustment of his status to that of a permanent resident. 8 U.S.C. §§ 1151-1154. One pathway to permanent residency is through a spouse or other immediate family member who is a United States citizen. *Id.* § 1151(b)(2)(A)(i). The first step on this path is for the citizen spouse to file a Form I-130 Petition for Alien Relative with United States Citizenship and Immigration Services (USCIS) to classify the non-citizen as a spouse. *See Moore v. Frazier*, 941 F.3d 717, 719-720 (4th Cir. 2019). After an I-130 petition is granted, the non-citizen spouse must

show that he is admissible as a permanent resident under 8 U.S.C. § 1182, and that he is eligible to adjust status under 8 U.S.C. § 1255(a).

It is an I-130 petitioner's burden to "establish . . . the claimed relationship of the petitioner to the beneficiary . . . in the form of primary evidence, if available." 8 C.F.R. § 204.1(f)(1). "A petition submitted on behalf of a spouse must be accompanied by . . . a certificate of marriage issued by civil authorities, and proof of the legal termination of all previous marriages of both the petitioner and the beneficiary." *Id.* § 204.1(a)(2). The validity of a marriage—including where its validity turns on an earlier divorce—is determined by the law of the state where the marriage was celebrated. *Adjei v. Mayorkas*, 59 F.4th 659, 664 (4th Cir. 2023) (citing *Jahed v. Acri*, 468 F.3d 230, 235 (4th Cir. 2006)); *see also Matter of Arenas*, 15 I. & N. Dec. 174, 174-175 (BIA 1975).

**B.    Factual Background**

The Plaintiffs in this case are Faiza Ambreen and Ali Imran. Ambreen is a naturalized U.S. Citizen. ECF 6 ("Defs.' MSJ") ¶ 9. Imran is a citizen and national of Pakistan who entered the United States in 1997 under a visitor visa. *Id.* ¶ 1. Imran was granted asylum in 1998 after certifying under oath that his complete name was Ali Imran and he had never been married or divorced. *Id.* ¶ 2. Imran once again made those same certifications when he applied for permanent residence in 2000. *Id.* ¶ 3. Imran became a lawful permanent resident in 2007. *Id.* ¶ 4. He applied for naturalization in 2012, but he withdrew that application in 2013. *Id.* ¶ 5.

In 2016, Imran pleaded guilty in this Court to felony immigration fraud in violation of 18 U.S.C. ¶ 1546(a). *Id.* ¶ 6. His plea agreement stipulated that:

- Imran lied in his asylum application regarding his marital history, name, address prior to living in the United States, and birth date, *id*;

2

- Imran made misstatements in his application for permanent residence regarding his name and birth date, *id*;

- Imran made similar misstatements in his naturalization application, including that he had only been married to Ambreen, *id*;

- his true date of birth was January 18, 1965, and not March 5, 1967, as he had indicated in his various applications, AR 323;

- his true name from birth was "Mohammad Kshif Choudry (with variations in spelling, including Mohammad Kashif Choudry, Mohammad Kshif Choudary, Mohammad Kashif Choudary)," AR 320-321; and,

- he had previously been married to Nicole Miehm, with whom he traveled to the United States from Belgium in 1997, AR 321.

Around the time of Imran's guilty plea in 2016, the Department of Homeland Security gave him notice to appear before an immigration judge in removal proceedings. Defs.' MSJ ¶ 7. Imran then filed a new application for asylum and withholding of removal. *Id.* ¶ 8.

  **C.** **Procedural Background**

   1. **Plaintiffs' petition**

On October 5, 2017, Ambreen submitted an I-130 petition to USCIS, naming Imran as the beneficiary and identifying him as her spouse. *Id.* ¶ 9. Ambreen's petition identified that she had only ever been married to Imran, whom she married on September 22, 2017, that Imran had also used the name Mohammad Kshif Choudary, that Imran had been married three times, and that his previous marriage ended on January 12, 2017. *Id.* ¶ 10. Ambreen submitted documentation in support of the request. First, she included a Virginia marriage certificate between Imran and Ambreen dated September 22, 2017 and listing Imran's date of birth as March 5, 1967. *Id.* ¶ 11.

3

She also submitted two divorce decrees. The first was a decree of divorce between "Ali Imran fka Mohammad Kshif Choudary" and Nicole Miehm, granted by the Circuit Court in Fairfax County, Virginia on January 12, 2017. AR 129-131. The second is a document from the "IInd Extra Joint Civil Judge & Family Judge" of Hyderabad, Pakistan, decreeing a divorce between Fakhra Khatoon and "Mohammad Kashaf." AR 132. In addition to the marriage and divorce decrees, Ambreen submitted two documents from Virginia state courts showing that in 1999, Ali Imran changed his name from Ali Imran to Mohammad Kshif Choudary, and that in 2002, Mohammad Kshif Choudary changed his name to Ali Imran. AR 125-128.

### 2. USCIS's denial

In October 2020, USCIS issued a notice of intent to deny (NOID) to Ambreen regarding the I-130 petition. It provided several reasons for its intent to deny the petition. First, it found that Imran and Amreen's 2017 Virginia marriage was invalid because he "provided false information on the marriage license regarding his real identity," listing his name as Ali Imran and his date of birth as March 5, 1967. AR 74. Second, USCIS found that the 2017 divorce decree, issued to "Ali Imran," was thus also obtained under a false identity, so it was "uncertain" to be valid under Virginia law. *Id.* Third, and finally, it determined that the petition had not shown the 1988 divorce to be valid, because it did not "establish[] that Mohammad Kashaf and Ali Imran are the same individual." *Id.*[1]

Plaintiffs responded to the NOID by submitting additional supporting documentation and explanations. These included a marriage certificate and English translation thereof for the marriage between Fakhra Khatoon and "Muhammad Kashaf Chudri" that registered their marriage as occurring on June 30, 1985 in Pakistan. AR 89-92. Plaintiffs also submitted notarized affidavits

---

1 USCIS also determined without explanation that Imran's name changes were for "fraudulent purposes." AR 74.

4

from Fakhra Khatoon and her brother attesting to the fact that she married Imran in 1985 and divorced him in 1988. AR 93-94.

USCIS issued its decision denying the I-130 petition on June 17, 2021. AR 30-34. It reiterated the reasons provided for denial in the NOID. AR 31. USCIS then considered the Plaintiffs' additional evidence. It found that Imran's use of multiple identities, as determined by the criminal proceedings against him in this Court, was "extremely relevant to the adjudication" of the petition. AR 32. It noted the inconsistency between the 1985 marriage certificate and Imran's prior statements that he had never been married before coming to the United States. AR 33. Based on these and other inconsistencies, USCIS determined that Amreen had not met the burden of showing that "Ali Imran [was] the person [she] actually married in 2017, and that he was free to marry her at that time." *Id.*

### 3. Plaintiffs' appeal to the BIA

Following USCIS's denial of the petition, Plaintiffs appealed to the BIA, alleging three primary errors. First, they argued that their marriage was valid under Virginia law because, under Va. Code Ann. § 20-31, a marriage is valid regardless of technical defects in the marriage license. AR 22-23. Second, Plaintiffs argued that his name changes were not fraudulently obtained, and, in any event, had no impact on the validity of his 2017 divorce. AR 23-25. Finally, Plaintiffs contests USCIS's determination that the 1988 divorce decree was invalid, arguing that they had in fact established the identity of "Mohammad Kashaf" (as named on that decree) and Imran. AR 25-26. Plaintiffs also submitted additional evidence in the form of official documents and a Department of State report in support of their appeal. AR 28.

The BIA affirmed USCIS's denial on August 24, 2022. Adopting and affirming USCIS's decision, it found that Imran's "birth certificates, inconsistent birth dates, divorce decrees under

different names, marriage certificates, affidavits, and court order concerning the beneficiary's name changes" were "insufficient to establish the claimed relationship." AR 8. It determined that because Imran had "not sufficiently explained the discrepancies contained in the record," USCIS's decision should not be disturbed. *Id.* The BIA did not consider the new evidence introduced as part of Plaintiffs' appeal.

### 4. Plaintiffs' APA suit

Following the BIA's denial of their appeal, Plaintiffs' filed suit in this court under the Administrative Procedure ACT, 5 U.S.C. §§ 701 *et seq.*, seeking review of the BIA's decision. ECF 1. Plaintiffs' complaint alleged that the BIA abused its discretion and acted in an arbitrary and capricious manner by failing to give adequate reasons for its denial of Plaintiffs' appeal, refusing to give legal effect to Virginia state court judgments, declining to give binding legal effect to a judgment of this Court, engaging in an internally inconsistent analysis, and refusing to take notice of the official documents Plaintiffs' attached to their appeal. *Id.* ¶ 33-36.

Defendants moved for summary judgment on January 2, 2024. ECF 5. Plaintiffs opposed that motion and cross-moved for summary judgment on February 6, 2024. ECF 11 ("Pls.' Opp."); ECF 12. Defendants submitted their reply (ECF 15) ("Defs.' Reply") on February 14, 2024 and the motions are now ripe for this Court's consideration.

## II. STANDARD OF REVIEW

The APA requires this court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA review is "highly deferential," and there is a "presumption in favor of finding the agency action valid." *Ohio Valley Environmental Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). A "reviewing court must consider whether" and agency's decision

6

"was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989) (citation omitted) (cleaned up). Put otherwise, a court "must ensure, among other things, that the agency has offered 'a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.'" *Ohio v. EPA*, 144 S. Ct. 2040, 2053 (2024) (quoting *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). In the immigration context, the BIA "abuses its discretion if it fails to give a reasoned explanation for its decision, or distorts or disregards important aspects of the applicant's claim." *Portillo Flores v. Garland*, 3 F.4th 615, 626, (4th Cir. 2021) (en banc).

On summary judgment in an APA case, a Court's review of agency action involves legal questions which may be resolved "based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

### III. ANALYSIS

USCIS's task in considering an I-130 petition is simple: to determine, based on the evidence submitted and "an investigation of the facts in each case," whether "the alien on behalf of whom the petition is made is an immediate relative" of the citizen petitioner. 8 U.S.C. § 1154(b). In this case, that means USCIS simply needed to determine whether Plaintiffs were lawfully married. That depends on the validity of their purported marriage, which, in turn, depends in part on whether all prior marriages were terminated before their marriage.

In a decision affirmed by the BIA, USCIS determined (1) that Imran's 2017 marriage to Ambreen was invalid because he listed an incorrect name and date of birth, (2) that his 2017 divorce was invalid on the same grounds, and (3) that his 1988 divorce could not be found to be

7

valid because it listed a different name. Any of these three bases would be sufficient to sustain the BIA's decision. Defs.' MSJ 17 (citing *Singh v. Garland*, 6 F4th 418, 427 (2d Cir. 2021)). But because the BIA did not provide reasoned and reasonable explanations for upholding any one of the three, its decision was arbitrary and capricious under the APA.

### A. Validity of Imran's 2017 Marriage

Before the BIA, Plaintiffs argued that their marriage was valid under Virginia law regardless of whether Imran listed an incorrect name and date of birth on the license. AR 22-23. The BIA appeared to reject that argument, AR 7-8, and Plaintiffs renew it here, Pls.' Opp. 9-10.

To determine the validity of a marriage, USCIS must apply the law of the place where the marriage was celebrated. *Matter of Hosseinian*, 19 I. & N. Dec. 453, 455 (BIA 1987). Virginia law provides that no marriage "shall be deemed or adjudged to be void" on the ground of "any defect, omission or imperfection in such license, if the marriage be in all other respects lawful, and be consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage." Va. Cod. § 20-31.

That law could not be much clearer: a marriage is valid if it is "solemnized under a license," "in all other respects lawful," and consummated with the belief of *just one* party "that they have been lawfully joined in marriage." Setting aside for now the question of whether Plaintiffs' marriage was "in all other respects lawful,"[2] its validity is plain. Neither USCIS nor the BIA contested the authenticity of Plaintiffs' marriage license or whether Plaintiffs' marriage was solemnized thereunder. Nor do they question the bona fides of the marriage or Plaintiffs' "full belief" that they have been married. Instead, the BIA simply asserts that because Imran included false information regarding his identity on the license, the marriage is "invalid under Virginia

---

[2] The parties agree that its lawfulness depends on whether Imran was married to anyone else at the time his marriage to Ambreen was celebrated, which depends in turn on the validity of Imran's divorces. *See Infra* sections III.B-C.

8

laws." AR 31; AR 7 (adopting USCIS's decision). But no Virginia authority supports this proposition, and the law that Defendants do cite undermines it. *See In re Ejigu,* 79 Va. Cir. 349 (2009) (holding that "complete nonexistence of the license," but not a defect in its contents, means there is no valid marriage). In the face of Plaintiffs' argument before the Board pointing to the applicable Virginia law, the BIA's action is "arbitrary, capricious," and "not in accordance with law." 5 U.S.C. § 701. The fact that the marriage decree "appeared invalid" to the BIA does not change that it failed to "consider the relevant factors" and engaged in a "clear error in judgment." *Marsh*, 490 U.S. at 378.[3]

### B. Validity of Imran's 2017 Divorce

Defendants point out (correctly) that "the issues with Mr. Imran's name and birthdate in his marriage decree were one of the *several* reasons that USCIS and the BIA found that Plaintiffs had not met their burden." Defs.' Reply 8; *see also* Defs.' MSJ 17. But Plaintiffs challenge those other bases as well, starting with the BIA's purported finding that Imran's 2017 divorce was invalid.

Before the BIA, Plaintiffs argued that USCIS erred in finding the 2017 divorce decree invalid. AR 24. They pointed out that the decree was between Imran and Nicole Miehm,[4] and included both his legal name and his other name, Mohammad Kshif Choudary. *Id.* The BIA declined to disturb USCIS's decision and gestured again towards the various inconsistent statements in the record and Imran's history. AR 8. In doing so, the decision falls short of providing a satisfactory explanation for the BIA's action. *See State Farm*, 463 U.S. at 43.

---

[3] Defendants' spill considerable ink defending the idea that if there was some "fraud" associated with Plaintiffs' marriage, it was not arbitrary and capricious to find that it was invalid under Virginia law. Defs.' Reply 9-10. This is beside the point, since the BIA did not provide any reason why a marriage infected in some way by "fraud" would be invalid under Virginia law.

[4] There is no dispute here that Plaintiff was previously married to Nicole Miehm in Belgium, as stipulated in his 2016 plea agreement. AR 321.

To begin with, the reasons underlying USCIS's and the BIA's refusal to credit the validity of Imran's 2017 divorce decree are murky at best. The BIA adopted USCIS's decision, which stated "that "[t]he authenticity of the 2017 divorce decree is not in question." AR 33. Then, in the very next sentence, USCIS stated that "the numerous contradictory statements provided by Mr. Imran throughout the years raise valid questions as to the authenticity and veracity of the document." *Id.* This inconsistency takes any justification on grounds of inauthenticity off the table. *See The Medicines Co. v. Kappos*, 699 F. Supp. 2d 804, 809 (E.D. Va. 2010) ("Agency action resting on an inconsistent or self-contradictory explanation is, by definition, arbitrary and capricious.").

A "veracity"-based rationale for discrediting the 2017 divorce decree does not get the BIA any further. USCIS rejected the divorce decree on the ground that it was "obtained under a false identity" and was therefore "uncertain" to be "valid under Virginia law." AR 31. Plaintiffs argued to the BIA that "the divorce was granted to Mr. Imran's legal name," which is his legal name as determined by Virginia, and that the divorce decree also listed the name "Mohammad Kshif Choudary." AR 23-24. The BIA did not respond to this argument, AR 7-8, rendering its decision as to the 2017 divorce neither "reasonable [nor] reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). First, it refused to "provide a reasoned explanation" for rejecting Plaintiffs' claims on appeal. *Portillo*, 3 F.4th at 626. Furthermore, it is unreasonable not to at least consider crediting the validity of an authentic divorce decree issued by Virginia that names Imran (in both his legal and "true" name) and Miehm, his acknowledged former wife.[5]

---

[5] The government's arguments likewise miss the mark. It reasserts that "Imran appeared to have engaged in fraud to get his name change and divorce decree, which in turn did not satisfy his burden under the immigration laws." Defs.' Reply 9-10. This begs the question, since Imran's burden under the *immigration laws* was to show a valid marriage as determined by *state law*. Neither USCIS, the BIA, nor the government now has offered any explanation why, under Virginia law, Imran's 2017 divorce decree is invalid.

10

### C. Validity of Imran's 1988 Divorce

Finally, the BIA upheld USCIS's decision concerning the authenticity and veracity of the 1988 divorce decree. Imran submitted to USCIS a verified translation from Urdu of a 1985 marriage degree between "Mohammad Kashaf Chudri" and Fakhra Khatoon, AR 89-92, a divorce decree between "Mohammad Kashaf" and Fakhra Khatoon, AR 132, and notarized affidavits from Khatoon and her brother attesting to the divorce, AR 93-94. Additionally, Imran pointed to the stipulation—agreed to by the government and approved by this Court—that his name from birth was "Mohammad Kshif Choudry (with variations in spelling, including Mohammad Kashif Choudry, Mohammad Kshif Choudary, Mohammad Kashif Choudary)." AR 320-321.

After considering this evidence, USCIS declined to credit the 1988 divorce decree as valid. Plaintiffs argued to the BIA that in doing so, USCIS failed to explain its "serious concerns" about the document, did not credit the 2016 stipulation that Ali Imran and Mohammad Kshif Choudary are the same person, and acted unreasonably in crediting the veracity of the 1985 marriage decree while at the same time questioning the 1988 divorce decree. AR 25-26. The BIA responded to this argument by adopting and affirming USCIS's decision, noting the "different names" involved in Imran's documentation, and stating that it was "not persuaded by the petitioner's argument that if one document is valid, the others must also be valid." AR 7-8.

Here too, the BIA did not offer a "satisfactory explanation for its action." *State Farm*, 463 U.S. at 43. This Court and USCIS have determined that Imran's name from birth is "Mohammad Kshif Choudry (with name spelling variations, including Mohammad Kashif Choudry, Mohammad Kshif, and Mohammad Kashif Choudary)." AR 31. That is, the government has recognized in both criminal and immigration proceedings that Imran went through life using his other name, which has a number of English spelling variations. Without discussing this stipulation,

11

the BIA upheld the rejection of Imran's 1988 divorce decree because it contained a "different name." The stipulation and the BIA's decision are facially inconsistent, and the BIA thus owed some explanation of how they can be reconciled. Because it provided "no reasoned response," its decision as to the 1988 divorce decree was arbitrary and capricious. *Ohio*, 144 S.Ct. at 2054. Such a reasoned response would also need to explain why Imran's 1985 marriage—listed under another different spelling—was valid (thus rendering his 2017 marriage void) but the divorce was not. *See* AR 26; Pls.' Opp. 11.[6]

The government looks to salvage the BIA's decision by arguing that "Plaintiffs' own submitted paperwork creates an issue of whether Ali Imran obtained a valid divorce because it provides inconsistent names." Defs.' Reply 13. The Court need not consider this argument, since neither USCIS nor the BIA identified *this* inconsistency—that is, the inconsistency between his name on the 1985 marriage certificate and 1988 divorce decree—as a reason that the 1988 divorce decree was not valid. *See SEC v. Chenery Corp*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). But even if it did, the government ignores the fact that the marriage decree is translated from Urdu, a language that "uses lettering completely different from that of English," such that there is no one "'correct' English-spelling transliteration[] of an Urdu name." Pls.' Opp. 11 (citing AR 89-92).

\* \* \*

USCIS, the BIA, and the government in its briefing all make much of the fact that Imran is a criminal and a fraud. But the Commonwealth of Virginia does not withhold from criminals or fraudsters the right to marry. The BIA may not refuse Plaintiffs' I-130 application based on some

---

[6] Finding that Plaintiffs' arbitrary-and-capricious arguments meritorious, the Court needn't consider Plaintiffs' issue preclusion claims regarding the 2016 stipulation.

generalized distrust. By the BIA's logic, it is far from clear if there is *any* evidence that Plaintiffs could produce to convince the government that they have entered a valid marriage.

The BIA responds to Plaintiffs arguments by contending that "USCIS could not question the validity of any such marriages unless a state entity had affirmatively invalidated those decrees." Defs.' Reply 10. This is doubly mistaken. First, USCIS is not required to wait for a state to affirmatively invalidate the decrees. It must simply explain why, under the applicable state law, the decree is invalid.[7] Rather than do that here, USCIS grounded its decision on Imran's past lies and frauds. Second, the government omits important context. As described above, the threshold determination of whether Plaintiffs are married is just the first step in Imran's path toward permanent residency. Imran must still satisfy USCIS—and it is far from clear that he can—that he is admissible under 8 U.S.C. § 1182, and eligible for adjustment of status under 8 U.S.C. § 1255.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (ECF 5) is **DENIED**; and it is further

**ORDERED** that Plaintiffs' Cross Motion for Summary Judgment (ECF 12) is **GRANTED**; and it is further

**ORDERED** that the BIA's decision of August 24, 2022 regarding Plaintiffs' I-130 petition is **VACATED**; and it is further

---

[7] USCIS also must "deny an I-130 petition if it determines that the beneficiary of that petition has at any time entered into a fraudulent marriage in order to obtain an immigration visa, regardless of the legitimacy of the beneficiary's current marriage." *Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663, 674 (E.D. Va. 2019) (citing 8 U.S.C. § 1154(c)). USCIS did not make any finding here that Plaintiffs' marriage was not bona fide.

13

**ORDERED** that this matter is **REMANDED** to the BIA. On remand, the BIA should reverse or vacate USCIS's decision regarding Plaintiffs' I-130 petition, or else provide reasons for affirming USCIS' decision.

The Clerk is hereby directed to enter judgment pursuant to rule 58 and to close this civil action.

It is **SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

August 23, 2024
Alexandria, Virginia